IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

TRAVIS MCCULLOUGH,

    Petitioner,

v.                                                            No. 12-1214

UNITED STATES OF AMERICA,

    Respondent.

_____

ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255,
DENYING CERTIFICATE OF APPEALABILITY
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL
_____

*INTRODUCTION*

Before the Court is the *pro se* 28 U.S.C. § 2255 motion of the Petitioner, Travis McCollough, to vacate, set aside or correct his sentence (the "Petition"). (D.E. 1.) McCullough, Bureau of Prisons register number 24314-076, is an inmate at the Federal Correctional Complex in Oakdale, Louisiana. For the reasons articulated herein, the Petition is DENIED.

*BACKGROUND*

On September 20, 2010, a federal grand jury, in Case No. 1:10-10077-JDB-1, returned an indictment against Petitioner and others, charging them with conspiracy to obtain ingredients and equipment necessary to manufacture methamphetamine and with manufacturing, possessing with intent to distribute, and possessing equipment and materials which may be used to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(a), 843(a) and 846. McCullough and co-Defendant Caleb Rice were also charged with theft of anhydrous ammonia for use in the manufacture of the drug, in violation of 21 U.S.C. §§ 841(a) and 864.

According to the presentence report (the "PSR"), on March 5, 2010, the Obion County, Tennessee sheriff's department received a citizen report of a truck from which was emanating the odor of anhydrous ammonia. The caller provided the location and the license plate number of the truck. The tags indicated the vehicle belonged to McCullough. After the vehicle pulled into the driveway of a residence, Sgt. Darrell Davis was dispatched to the address and, upon his arrival, observed a truck matching the description given to the dispatcher parked behind a shed in back of the house. As he got out of his car, he could smell anhydrous ammonia and saw three men running from the area of the truck. In the back of the truck was a yellow plastic spray tank with a frost line which was consistent with a container housing anhydrous ammonia. He also saw a camouflage bag next to the vehicle that held mixing bowls, plastic bags, coffee filters, drain cleaners, salt, and a funnel, as well as a .40 caliber handgun on a boat a few feet away. It was noted in the PSR that officers later discovered the weapon belonged to Petitioner.

A pill soak was located in a one-gallon plastic container under a lawn trailer approximately five feet from McCullough's vehicle. A second rested on a table in the shed along with methamphetamine oil, a gas generator, mixing bowls and a funnel. A third was in a grill on the house's back porch, where officers also discovered a loaded Marlin 30/30 rifle. A fourth pill soak was found in a one-gallon plastic bag in the boat with the handgun. After more officers arrived on the scene, they detected an additional methamphetamine cook site approximately seventy-five yards from the residence.

Officers obtained a search warrant and entered the house. They found the Petitioner in a bedroom with bottles of pills and $809 in cash. The search of a second bedroom revealed a bag containing a green leafy substance, a .50 caliber muzzle loader, two .22 caliber rifles, syringes, sets of digital scales, drug paraphernalia, lithium batteries, a box of .40 caliber federal

ammunition, 30/30 rounds, brass knuckles, a plastic bag of 124 ephedrine pills and cans of starter fluid. In a bathroom, officers discovered more syringes and a spoon with methamphetamine residue. In the living room were five plastic containers of marijuana plants and, in the kitchen, a set of digital scales, ammunition for various rifles, coffee filters, and a pipe and piece of aluminum foil containing drug residue. In searching other vehicles parked on the premises, officers found drugs, a receipt for the purchase of starter fluid, a bottle of drain opener, more lithium batteries and scales, a shut-off valve and two propane tanks that had been used to house anhydrous ammonia.

After his arrest, McCullough was determined to be indigent and Assistant Federal Defender M. Dianne Smothers was appointed as his counsel. On September 12, 2011, he appeared before this Court to plead guilty to count four of the indictment (possessing equipment and materials that may be used in the manufacture of methamphetamine). The Court accepted the plea on September 12, 2011 and, at a hearing on December 16, 2011, sentenced McCullough to eighty months incarceration followed by three years of supervised release. (Case No. 1:10-cr-10077-JDB-1, D.E. 175.) This sentence constituted a twenty-eight-month downward variance from the lowest end of the applicable guideline range. Judgment was entered on the day of the sentencing hearing. (Case No. 1:10-cr-10077-JDB-1, D.E. 177.) He did not appeal.

*THE PETITION*

The Petition, as supplemented on November 21, 2012, presented the following issues:

1. Whether trial counsel rendered ineffective assistance, in violation of the Sixth Amendment, by failing to object to the two-level firearm enhancement in the PSR. (D.E. 1 at 4.)

2. Whether the Petitioner should receive a sentence reduction based upon his post-sentence rehabilitation. (*Id.* at 5.)

*LEGAL STANDARD*

Section 2255(a) provides that

> [a] prisoner in custody under sentence of a court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). In order to succeed on a motion under the statute, a petitioner must show "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Shaw v. United States*, ___ F. App'x ___, 2015 WL 1296092, at *2 (6th Cir. Mar. 23, 2015) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).

*ANALYSIS OF PETITIONER'S CLAIMS*

Ineffective Assistance of Counsel.

Generally, challenges to sentencing cannot be made for the first time in a § 2255 motion. *Weinberger*, 268 F.3d at 351 (citing *Grant v. United States*, 72 F.3d 503, 505-06 (6th Cir. 1996)). They are waived unless made on direct appeal. *Id.* However, "challenges that cannot otherwise be reviewed for the first time on a § 2255 motion can be reviewed as part of a successful claim that counsel provided ineffective assistance[.]" *Id.*

The Sixth Amendment guarantees the effective assistance of counsel to criminal defendants. *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984). "A defendant facing the possibility of incarceration has a Sixth Amendment right to counsel at all 'critical stages' of the criminal process, and a sentencing hearing is one type of 'critical stage' at which the right to

counsel attaches." *McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012) (quoting *Benitez v. United States*, 521 F.3d 625, 630 (6th Cir. 2008)). In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that "defense counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment and that defense counsel's deficient performance caused prejudice." *Winborn v. United States*, ___ F. App'x ___, 2015 WL 1036160, at *2 (6th Cir. Mar. 11, 2015) (citing *Strickland*, 466 U.S. at 687) (some internal quotation marks omitted). "Unless the petitioner demonstrates both deficient performance and prejudice, it cannot be said that the conviction or sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Goward v. United States*, 569 F. App'x 408, 412 (6th Cir. 2014) (internal alterations & quotation marks omitted).

An attorney's "failure to object to an error at sentencing or failure to raise a viable argument that would reduce [her] client's sentence may constitute deficient performance." *McPhearson*, 675 F.3d at 559. However, "[t]here is a strong presumption that an attorney renders adequate assistance and makes all significant decisions in the exercise of reasonable professional judgment." *Maiyo v. United States*, 576 F. App'x 567, 570 (6th Cir. 2014) (citing *Strickland*, 466 U.S. at 689-90) (internal quotation marks omitted). The petitioner must establish that his counsel's "performance fell below an objective standard of reasonableness." *Id.* "The issue is whether counsel's performance was so manifestly ineffective that defeat was snatched from the hands of probable victory." *Smith v. United States*, Nos. 1:07-cr-146-CLC-SKL-4, 1:11-cv-215-CLC-SKL, 2015 WL 164155, at *2 (E.D. Tenn. Jan. 13, 2015) (quoting *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992)) (internal quotation marks omitted). In order to demonstrate prejudice, he must show "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Delaine v. United States*, ___ F. App'x ___, 2015 WL 1136454, at *3 (6th Cir. Mar. 16, 2015) (quoting *Strickland*, 466 U.S. at 694). A petitioner claiming ineffective assistance of counsel faces a heavy burden. *Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006). The Court is not required to perform an analysis under both prongs. *Miller v. United States*, 561 F. App'x 485, 490 (6th Cir. 2014).

As noted above, Petitioner asserts that his attorney's failure to object to the two-level firearm enhancement amounted to ineffective assistance of counsel. In her position paper, Smothers did in fact object to that portion of the PSR indicating that the handgun in the boat belonged to McCullough and, consequently, to application of the enhancement. (Case No. 1:10-cr-10077-JDB-1, D.E. 172 at 1-2.) In an addendum to the PSR, the probation officer noted the objection and made the following response:

> The defendant asserts that he was not outside near the methamphetamine manufacturing material and firearm minutes before officers arrived at the residence. Travis McCullough's truck was found behind the residence of Caleb Rice with anhydrous ammonia in the back of the truck along with another container that housed anhydrous ammonia. The defendant has not asserted that anyone else was driving his truck that morning. The defendant's vehicle was reportedly ten feet from the firearm on the boat. There was also a loaded firearm on the back porch. Investigative reports support the inference that at some point that morning, Travis McCullough was outside in close proximity to pill soaks and other materials used to manufacture methamphetamine, as well as the firearms. Sgt. Davis' written narratives state that the citizen who called about the truck called at approximately 6:00 a.m. and that he was dispatched to the location at 6:05 a.m. Sgt. Davis called Sgt. Matt Woods for backup while at the residence at approximately 6:32 a.m. These facts indicate that Sgt. Davis arrived at the home no later than 6:32 a.m. The search warrant was not served, and Travis McCullough found in the residence, until approximately 10:15 a.m. This was ample time for the defendant to fall asleep in the house while investigators were waiting on the search warrant and does not preclude him from being outside before Sgt. Davis arrived. The above information also serves to corroborate the statement that Justin Easley gave to officers when he advised that Travis McCullough was outside with the other co-conspirators before officer Davis arrived. Travis McCullough went inside the residence before Sgt. Davis arrived

6

> while Mr. Easley and Mr. Rice remained outside. Mr. Easley and Mr. Rice subsequently ran into the woods upon Sgt. Davis' arrival.
>
> The defendant claims the firearm found on the boat was not his. The same testimony referenced in the defendant's position paper also included that the firearm belonged to Travis McCullough. However, ownership of the firearm is not a requirement to trigger the above enhancement. The defendant was placed at the scene of the methamphetamine cook by a co-defendant and his truck was found ten feet from the firearm. Further, due to the number of firearms found at Caleb Rice's residence, it would be reasonably foreseeable to the defendant that a firearm would be present at or near the methamphetamine manufacturing materials. Therefore, whether the firearm was the defendant's or a co-conspirator[']s, the firearm enhancement would be applicable to the defendant.

(Addendum to PSR at 23-24.) At the sentencing hearing, counsel advised the Court that, after discussing the matter with the Government, the decision was made to withdraw the objection. (Case No. 1:10-cr-10077-JDB-1, D.E. 223 at 4.)

Because it is dispositive, the Court will focus only on the deficient performance prong. Section 2D1.1 of the United States Sentencing Guidelines ("USSG") provides for a two-level sentencing enhancement "[i]f a dangerous weapon (including a firearm) was possessed" in connection with a drug offense. United States Sentencing Comm'n, Guidelines Manual § 2D1.1(b)(1). The comment to the guideline notes that "[t]he enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons." *Id.* § 2D1.1 cmt. 11A (2014). "The enhancement *should* be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.* (emphasis added).

In order for the enhancement to be applied, the Government must establish "by a preponderance of the evidence that (1) the defendant actually or constructively possessed the weapon, and (2) such possession was during the commission of the offense." *United States v. Climer*, 591 F. App'x 403, 412-13 (6th Cir. 2014) (quoting *United States v. Greeno*, 679 F.3d

510, 514 (6th Cir. 2012)). A defendant has constructive possession of a firearm when he has "ownership, or dominion or control over the item itself, or dominion over the premises where the item is located." *United States v. Howard*, 570 F. App'x 478, 481 (6th Cir. 2014). If the Government satisfies its burden, the defendant must then demonstrate that it was clearly improbable that the weapon was "connected to the offense." *Climer*, 591 F. App'x at 413.

"The enhancement may also apply if a member of the conspiracy possessed the firearm and the member's possession was reasonably foreseeable by the other members in the conspiracy." *United States v. Cobbs*, 233 F. App'x 524, 542 (6th Cir. 2007). In this circumstance, the Government need not show that the defendant actually possessed the weapon. *United States v. Galvan,* 453 F.3d 738, 742 (6th Cir. 2006). Nor must the defendant have necessarily known about the weapon. *United States v. Catalan*, 499 F.3d 604, 607 (6th Cir. 2007). Reasonable foreseeability is determined based on an objective test -- "whether a reasonable person would have foreseen that a gun would be present during the commission of the offense." *Id.* Objective evidence "that the defendant at least knew it was reasonably probable that his co-conspirator would be armed" is required. *United States v. Napier*, 422 F. App'x 420, 424 (6th Cir. 2011) (internal alterations omitted). The Sixth Circuit has declined to find error in a trial court's conclusion that possession of a firearm by a co-conspirator was reasonably foreseeable when there are large amounts of drugs in a single location. *Id.*

There is no evidence in the record that McCullough owned the gun or had dominion over it. Nor is there evidence to suggest that he had dominion over Rice's property. Rather, the record reflects only that he may have been sleeping there at some point during the time officers sought a search warrant.

However, the evidence supports a finding that Rice possessed firearms and kept them at his property, which itself was utilized as a situs for drug manufacturing activities. McCullough was clearly involved in those activities. Considering that the residence, where the Petitioner was arrested, and the area around his truck were essentially awash with drug manufacturing materials, guns and ammunition, he knew or could have reasonably foreseen that weapons were possessed and used in furtherance of the methamphetamine cooking activities conducted there. *See United States v. Benson*, 591 F.3d 491, 504-05 (6th Cir. 2010) (where record supported conclusion that co-conspirator kept firearms at his residence, which was the hub of his drug trafficking activities, defendant knew or could have reasonably foreseen that co-conspirator possessed firearms and that they would be used in furtherance of the drug conspiracy; accordingly, defendant's firearms enhancement not clearly erroneous). McCullough has not so much as argued that it was clearly improbable that the handgun in the boat was connected to the offense.

Under the circumstances presented in this case, counsel's obvious conclusion that lodging a challenge to the firearm enhancement would not have borne fruit was an objectively reasonable one. Thus, her performance was not constitutionally deficient. Petitioner is not entitled to relief for ineffective assistance of counsel.

Post-Sentence Rehabilitation.

McCullough maintains that since his sentencing he has obtained his GED and remained discipline free. This post-sentencing rehabilitation, he contends, should result in a reduction of his sentence. In support of his position, Petitioner cites the United States Supreme Court's recent decision in *Pepper v. United States*, 562 U.S. 476, 131 S. Ct. 1229 (2011). However, McCullough misunderstands the Court's ruling. The issue raised in *Pepper* was whether a

district court may consider evidence of the defendant's post-sentencing rehabilitation at *resentencing. Pepper*, 131 S. Ct. at 1233. Petitioner is not before the Court for resentencing. While his attempts to better himself during his incarceration are commendable, Petitioner cannot receive a reduction of sentence on that basis under § 2255. *See Eaves v. United States*, Nos. 4:07-CR-12, 4:10-CV-36, 2010 WL 3283018, at *4-5 (E.D. Tenn. Aug. 17, 2010).

*CONCLUSION*

Because the issues presented by McCullough are meritless, they are DISMISSED. The Clerk of Court is DIRECTED to enter judgment for the United States.

*APPEAL ISSUES*

Twenty-eight U.S.C. § 2253 requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate. The COA must also indicate "which specific issue or issues satisfy" the required showing. 28 U.S.C. § 2253(c)(3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted). A COA does not require a showing that the appeal will be successful. *Id.* at 337. Courts, however, should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (per curiam).

In this case, for the reasons previously stated, the issues raised by the Petitioner lack substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Rule 24(a) of the Federal Rules of Appellate Procedure. *Id.* at 952. The Rule provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, the Rule also provides that, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons it denies a COA, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED.[1]

IT IS SO ORDERED this 14th day of April 2015.

                                        s/J. DANIEL BREEN
                                        CHIEF UNITED STATES DISTRICT JUDGE

---

[1] If Petitioner files a notice of appeal, he must also pay the full appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.